UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x
                                                :
                                                :
UNITED STATES OF AMERICA                        :
                                                :     11 Crim. 1083
           v.                                   :
                                                :     **OPINION**
JABAR GILLIAM                                   :
                                                :
                                                :
------------------------------------------------x


Defendant Jabar Gilliam moves to suppress evidence obtained as a result of two incidents: the Maryland State Police's ("MSP") receipt of Gilliam's cell phone records from his cellular provider without a warrant and his warrantless arrest by the New York Police Department ("NYPD").

The motions are denied.


**Background**

A sixteen year-old girl was reported missing by the Sheriff of Fredrick County, Maryland on November 30, 2011. An investigation was opened in which MSP quickly joined. In the course of this investigation, the sheriff contacted the girl's foster mother who indicated that she associated with a 29-year-old man named "Jabar," now alleged to be Gilliam. MSP also contacted the girl's biological mother in California who informed them that she had been in

1

touch with her daughter by phone. The mother indicated that, through these conversations, she had learned that Gilliam had taken her daughter from Maryland to New York City where he was forcing her to work as a prostitute. MSP also contacted the girl's social worker who expressed similar concerns and found the mother's information to be very credible.

Based on this information, on December 2, 2011, MSP contacted Gilliam's cellphone provider, Sprint, to request Gilliam's call records containing cell site information as well as information about his precise location. MSP described their need for this information as arising from an exigent situation involving "immediate danger of death or serious bodily injury" involving the prostitution of a missing child. Sprint complied and supplied MSP with Gilliam's cellphone records through the night of December 1, 2011.

Meanwhile, the girl continued to call her biological mother, at one point calling her from Gilliam's phone. The victim's mother relayed this information and Gilliam's phone number to MSP. MSP then ascertained the street address associated with this phone number, which was an address in the Bronx.

MSP then notified the FBI, who relayed this information to NYPD.

That afternoon, NYPD went to the Bronx address listed for Gilliam's phone number. There they met a woman who identified herself as Gilliam's mother. Gilliam was not at that address, but he was close by. Using the precision location data obtained from Sprint, NYPD was able to locate and observe

Gilliam and the victim together on the street a few blocks away, and they saw the two entering an apartment building.

NYPD followed the two to the third floor of the apartment building where they confronted Gilliam. As NYPD Detective Ryan began handcuffing him, however, Gilliam broke free and fled through a nearby apartment door. Detective Ryan pursued Gilliam, who slammed the apartment door on Detective Ryan's foot. Soon thereafter, however, other officers located Gilliam in the apartment and arrested him for the suspected assault of Detective Ryan.

NYPD officers removed items from the apartment belonging to both Gilliam and the victim, but did not examine them until they had obtained a warrant. While in custody, Gilliam knowingly waived his Miranda rights and made statements to NYPD officers. He also consented to a search of his cell phone. NYPD subsequently obtained warrants to search the other evidence obtained from the apartment and Gilliam's person. Gilliam was subsequently re-arrested for sex trafficking.

On December 15, 2011, Gilliam was charged in a two count, federal court indictment with sex trafficking of a minor for the purposes of prostitution in violation of 18 U.S.C. § 1591(a), (b)(1), and (b)(2) as well as 18 U.S.C. 2423(a).

Gilliam moved on April 6, 2012 to suppress evidence stemming from his December 2, 2011 arrest. He then moved, on June 22, 2012, to suppress evidence developed due to MSP's receipt of phone records from Sprint.

**Discussion**

<u>The Request of Records from Sprint</u>

Evidence in a criminal proceeding may be suppressed if it was either obtained in violation of the Fourth Amendment or in violation of a statute which, by its terms, provides for the suppression of evidence. See Sanchez-Llamas v. Oregon, 548 U.S. 331, 348 (2006); United States v. Donovan, 429 U.S. 413, 432 n. 22 (1977); United States v. Caceres, 440 U.S. 741, 755-56 (1979).

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 is such a statute. It provides that no evidence derived from the interception of a wire or oral communication may be received except in compliance with its terms. 18 U.S.C. § 2515.

Gilliam argues that, in this case, § 2515 bars the use of any evidence received from Sprint because MSP obtained it in violation of the Pen Register Statute. 18 U.S.C. § 3121 et seq. This is incorrect.

18 U.S.C. § 3125 restricts the use of pen registers and trap and trace devices. But MSP did not request or use either sort of device. And in either case, that statute does not provide suppression of evidence as a remedy for the unlawful use of pen registers or trap and trace devices. See 18 U.S.C. § 3121(d).

MSP's actions were instead justified under the Stored Communications Act, 18 U.S.C. § 1701 et seq. The statute permits a service provider to disclose

customer records "to a governmental entity, if the provider, in good faith, believes that an emergency involving danger of death or serious physical injury to any person requires disclosure without delay of information relating to the emergency." 18 U.S.C. § 2702(c)(4).

Under the Fourth Amendment, warrantless government searches and seizures are reasonable and, thus, do not violate the Amendment, when they are required by exigent circumstances. See Kentucky v. King, 131 S. Ct. 1849, 1856-57 (2011); United States v. Klump, 536 F.3d 113, 117 (2d Cir. 2008).

The exigent circumstances exception applies where a reasonable and experienced officer would have had reason to believe that there was an urgent need to act. It is an objective test requiring an evaluation of the circumstances in their totality. United States v. Klump, 536 F.3d 113, 117-18 (2d Cir. 2008).

It has been sensibly held that the potential sexual exploitation of a minor is an exigent circumstance. See, e.g., United States v. Johnson, 22 F.3d 674, 680 (6th Cir. 1994) (concluding that officers were responding to an exigent circumstance when they removed the lock from an armored gate to remove an minor who had been held against her will and sexually assaulted); United States v. King, 560 F. Supp. 2d 906, 916 (N.D. Cal. 2008) (concluding that the need to protect a minor from sexual contact can give rise to an exigent circumstance even without a risk of physical injury to the child).

In the present case MSP contacted Gilliam's cellphone provider to request records only after receiving reliable information that a the girl had been taken

5

by Gilliam to New York to work as a prostitute. MSP would reasonably conclude that it was necessary to immediately ascertain the location of Gilliam and the victim to prevent her ongoing sexual exploitation.

Neither a statutory provision nor the Fourth Amendment was violated and evidence gathered thanks to the records obtained by MSP from Sprint should not be suppressed.

GILLIAM'S ARREST

The arrest of Gilliam for assault and his re-arrest for sex trafficking were amply justified by the circumstances earlier described in the opinion. There is no need for further discussion of the issue.

## Conclusion

The motions to suppress are denied. No evidentiary hearing is necessary.

So ordered.

Dated: New York, New York
September 12, 2012

*Thomas P. Griesa*
Thomas P. Griesa
U.S. District Judge

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Sept 12, 2012